## THE BLOSSBURG & CORNING RAILROAD COMPANY *v.* THE TIOGA RAILROAD COMPANY.

### March, 1864.

A contract for the operation, by one railroad company, of a road owned by another, for the mutual benefit of both, provided that one was to furnish the road, and the other the rolling stock and motive power, and that uniform rates of tolls and fares should be fixed annually by agreement, and the latter company were to pay the former two-thirds of the receipts, . . . . " such additional charges by way of discrimination as should be made for short distances for motive power, not to be included in the term receipts."

*Held*, 1. That the rates of tolls and fares contemplated were to be uniform in the sense of not fluctuating, but not necessarily uniform in the sense of proportion to the distance of transportation.

2. That the additional discriminative charges, contemplated by the exception, were only such as should be imposed by the company furnishing the motive power, for that power, for short distances, and in addition to the discriminative charges contained in the table of uniform rates.*

---

* See also Pennsylvania Coal Co. *v.* Delaware & Huds. Can. Co., in this series.

The Corning & Blossburg Railroad Company, of which the plaintiffs were the assignees, owned a railroad of about fifteen miles' length in this State, and the defendants were owners of a railroad of about twenty-six miles' length in Pennsylvania, which connected at the State line. The two companies made an agreement for the continuous operation of both roads by the defendants, the material parts of which are stated in the opinion.

The tariff of rates agreed on by the parties made a discrimination in respect to short distances; charging, for instance, for 1,000 feet of lumber, three and sixty-five one-hundredths cents per mile for the whole length of the route, and higher rates, up to seven cents per mile for short distances. The two-thirds of defendant's receipts for the period in controversy amounted to thirty-four thousand eight hundred and twenty-nine dollars and eighty-nine cents; but they claimed to deduct therefrom four thousand eight hundred and forty-seven dollars and four cents, being the amount of the difference between calculating the charges by tariff, and by through rates; and they paid over the residue of about twenty-nine thousand dollars. This action was brought, in the supreme court, to recover the amount thus withheld. The court gave judgment, on the report of a referee, for the amount claimed, and defendants appealed.

*Alex. S. Johnson, Henry M. Hyde,* and *John H. Reynolds,* for defendants, appellants.

*D. Rumsey,* for plaintiffs, respondents.

By THE COURT.—HOGEBOOM, J.—The only serious question in this case arises upon the construction to be given to the agreement made between the parties on July 29, 1851. As the ambiguity, if any, is patent upon the face of the instrument, parol evidence to explain its meaning was proper'y excluded. By this agreement, the road was to be operated for the mutua. benefit of the parties. The plaintiffs were to furnish the road, free of charge to defendants, together with all necessary depots, machine shops, engine houses, and grounds. The defendants

were to furnish the necessary rolling stock and motive power, and to operate the road between Corning and Blossburg, for the purpose of transporting passengers, mails and freights for all the regular business that should be furnished to the railroad. Uniform rates of tolls and charges for transportations of passengers, mail and freight on said road, were to be established annually by the mutual agreement of the parties, and, in case of their disagreement, by disinterested persons to be chosen by them. The defendants were to pay the plaintiffs two-thirds of the receipts for passengers, mails and freights—"the expenses charged customers for the loading and unloading coal, lumber and other freights, and for warehousing *and such additional charges by way of discrimination as should be made for short distances for motive power, not to be included in the term receipts as above mentioned.*" The question arises on this latter clause "additional charges by way of discrimination for motive power."

Under this contract, the parties agreed upon a tariff of rates, both for freight and passengers, under the provision in the contract which called for the establishment of "uniform rates of tolls and charges for transportation of passengers, mails and freights." These freights were, in one sense—probably in the sense intended by the contract,—*uniform ;* that is, not fluctuating during the period for which they were established, but they were not graduated at the same uniform rate per mile for long and short distances. On the contrary, they differered materially according to the distance traversed, being greater for the short distances, and less for the long distances. The whole length of the road was forty-one miles. Between the termini at Blossburg and Corning, there were nine intervening passenger, and twelve intervening freight stations, at various distances, from five to thirty-six miles, from the termini of the road. There were no established or agreed charges for loading or unloading coal, lumber and other freights, nor for warehousing; and none additional by way of discrimination for short distances for motive power, unless they were included in, and were in fact, the identical discriminating rates contained in the tariff of uniform rates before mentioned, established by the mutual agreement of the parties. This latter construction

is the one claimed by the defendants, who contend that they are entitled to the *entire* excess of receipts for passengers, mails and freights ·to and from all the intervening stations, beyond what those receipts would have been if charged at the same rate per mile, as is by that tariff of rates charged per mile for the entire distance between Blossburg and Corning; whereas, the plaintiffs contend that the parties were to participate, in the proportions provided by the contract, in *all* the receipts, for whatever distances, resulting from the uniform rates agreed on by the parties, and that the additional charges by way of discrimination for short distances for motive power spoken of in the contract, refer only to additional charges beyond those contained in the tariff of uniform rates. The referee of the supreme court adopted this latter construction of the contract, and if it be the correct one the judgment should be *affirmed*, if it be not, then the judgment should be *reversed*, and a new trial granted with costs to abide the event.

1. The tariff of rates before mentioned, seems to be " uniform rates of tolls and charges for transportation of passengers, mails and freights," mentioned in the contract. Such is the practical construction given to it by the parties.

They *agreed* upon it as such and adopted it for one year, according to the requirements of the contract. Counsel for both parties so assume the fact to be on this argument.

Such is the fair interpretation of the contract. Uniform rates, in the sense here used, mean, I think, rates, which, for the time they are established, shall be kept at the same point, and shall not be variable or fluctuating. We may, perhaps, take judicial notice of a fact so notorious as that railroad rates differ almost universally in the rate per mile between short and long distances, unless prevented by legislative restrictions. We may therefore conclude that when the parties contracted for uniformity of rates, they did not intend to lose sight of this well-established usage among corporations of this description.

2. I think the plaintiffs were intended to participate in all the uniform rates of tolls and charges, at the prices established in the tariff of rates. ·

These were the receipts for passengers, mails, and freights,

of which the contract declares they shall be entitled to two-thirds.

These uniform rates were established by the *mutual agreement* of the parties, because they were *mutually* to share in the receipts arising therefrom. Their mutual interest required that they should each have a voice in fixing these rates and graduating them at the proper standard. No unjust discrimination was to be made in favor of short distances in the established rates, to the general prejudice of the railroad, without the consent of both parties. As one furnished the motive power, and the other the track and fixtures, it was foreseen that they might possibly differ in graduating the tariff of rates, and provision was made for adjusting such differences of opinion.

The *additional* charges spoken of in that clause of the contract now in question, are *exclusive* of those contained in the table of uniform rates.

This is a reasonable inference, from the fact that they are spoken of in connection with other charges thus obviously excluded. The charges for loading and unloading and warehousing, are confessedly not included. Why then should *these* charges, spoken of in the same connection, be deemed to be included?

The charges for loading and unloading and warehousing are left to the discretion of the defendants. It is fair to presume that *these* were designed to be of the same character, and to be disposed of in like manner.

The charges here spoken of are *additional* charges, and it is reasonable to conclude that they were *additional* to those theretofore authorized. The language of the agreement is not that *all* discriminative charges shall be excluded from the receipts which are to be subject to division, but such *additional* discriminative charges as shall be made for short distances, for motive power. The uniform rates had made, or were expected to make, discriminative charges. These charges were not exclusively for *motive power*. They were made upon general considerations as to the prices which the patrons of the road would submit to for the privileges enjoyed and the services rendered, and they were placed, doubtless, at as high a

rate as was deemed to be consistent with the success of
the enterprise.   They were not governed simply and precisely
by the amount of the expenses incurred or services rendered,
but by the laws of trade, and of demand and supply.   At
some points there might be danger of diversion of trade or
travel to rival roads, and this would dictate a reduction of
prices.   At other points, where no such danger existed, and
property required a market, an increase of prices might be
sound policy.

It is possible that the rates for the entire length of the road
might be put below a strictly compensatory standard, on a con-
sideration of the fact that intervening stations would bear a
higher tariff.   We are not to conclude that the price for the
longest distance was necessarily the standard and the remuner-
ative price which was to graduate and control all the others.
As in all the other cases, a great variety of considerations en-
tered into this question of prices.   When, therefore, the con-
tract speaks of additional charges by way of discrimination for
short distances for motive power, I think it means strictly
what it says.   1. That the charges referred to are *additional*
charges, additional to those contained in the tariff of uniform
rates.   2. Additional, *discriminative* charges beyond the dis-
criminative charges contained in the table of uniform rates.
3. Additional, discriminative charges *for short distances,* not
for long distances, nor for distances nearly the whole length of
the road.   4. Additional, discriminative charges for short
distances, *for motive power*, not for other purposes, not founded
upon general considerations as to the policy of favoring the
transportation of a particular class of freight, or preventing a
diversion of custom to competing railroads.   Hence, also, I am
of opinion that by the terms of the contract these additional
charges might be lawfully imposed by the defendants for the
purposes specified, beyond the charges fixed in the uniform
tariff of rates adopted by the parties.

It is supposed this could never have been intended, as it
would leave the interests of the road at the mercy of the de-
fendants.   But to this it may be answered: 1st. That the same
argument might be applied to the charges for loading and un-
loading, and warehousing, which might be put at extravagant

and extortionate rates. 2nd. That the defendants, equally with the plaintiffs, were interested in the pecuniary success of the road, and in the same direction, and that ordinarily this would operate as a sufficient check upon excessive charges. It may well be conceived that contingencies might arise where, for short distances, and short distances alone, an excess of motive power beyond the ordinary wants of the road, might be required, and I have no doubt that the charges for this extraordinary service, rendered by the defendants alone and to be paid to them alone, were deemed safe to be confided to the integrity and judgment of a partner in the general enterprise whose interests would suffer, in common with those of the plaintiffs, by a rate of charges which would amount to a prohibitory tariff. This conclusion is somewhat strengthened, I think, by the language of the contract, which requires the defendants to furnish "the necessary motive power, engines, machinery and cars for all the *regular* business that shall be furnished to said railroad," fairly implying that an extraordinary supply of motive power might be compensated by discriminative charges adapted to the emergency.

In short, the *discrimination* referred to was not a discrimination between the prices thus charged and the *lowest rates* charged in the agreed table of uniform rates, for no rate *per mile* for any distance was ever agreed upon, and there was, therefore, no means of determining what particular gross rate should be selected from which to discriminate; but a discrimination between the prices thus charged and the prices charged for the same distance in the table of uniform rates in consideration of the surplus motive power thereby required.

When, therefore, the contract declared that the defendants should pay to the plaintiffs two-thirds of the receipts for passengers, mails and freights, as the generality of the expression might, perhaps, be deemed to include the entire receipts from all sources whatever, it was apparently thought best, by way of precaution, to declare that in this term were not to be included charges for loading, unloading, warehousing and extraordinary supplies of motive power for short distances.

This, I think, is the fair and reasonable interpretation of the

contract, and the most consistent with the probable intention of the parties thereto.

I am for affirming the judgment of the court below.

A majority of the judges concurred.

Judgment affirmed, with costs.